IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CHRISTOPHER CRUZ CASTILLA | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:21cv236 |
| | § | |
| COMMISSIONER, SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying an application for Social Security benefits. The matter was referred to the undersigned for findings of fact, conclusions of law and recommendations for the disposition of the matter pursuant to 28 U.S.C. § 636(b)(1). Having fully reviewed and considered Plaintiff's brief, the Commissioner's response, and Plaintiff's reply, the undersigned recommends that the Commissioner's final decision be **AFFIRMED** and that the above-styled lawsuit be **DISMISSED WITH PREJUDICE**.

PROCEDURAL HISTORY

Plaintiff protectively filed an application for disability insurance benefits and an application for supplemental security income on March 1, 2019, alleging a disability onset date of February 1, 2019. The applications were denied initially and again on reconsideration. Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing on January 6, 2020[1] and issued an unfavorable decision on September 18, 2020. Plaintiff

---

[1] The hearing was conducted by telephone with the consent of the parties due to the COVID-19 pandemic. Administrative Record, ECF 14-2, at *12 (Bates stamp p. 11).

1

submitted a request for review of the ALJ's decision. The Appeals Council denied the request on April 29, 2021. As a result, the ALJ's decision became that of the Commissioner. Plaintiff then filed this lawsuit on June 16, 2021, seeking judicial review of the Commissioner's decision.

## STANDARD

Title II of the Act provides for federal disability insurance benefits. Title XVI of the Act provides for supplemental security income for the disabled. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir. 1983); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 1105 (5th Cir. 1980).

Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather,

conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

3

be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process. *Villa*, 895 F.2d 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id*.; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475). Under the five–step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non–severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)–(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three creates a presumption of disability. *Id*. To obtain Title II disability benefits, a plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to

the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

The procedure for evaluating a mental impairment is set forth in 20 CFR §§ 404.1520a and 416.920a (the "special technique" for assessing mental impairments, supplementing the five-step sequential analysis). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 CFR §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 CFR §§ 404.1520a(c)(2–4), 416.920a(c)(2–4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 CFR §§ 404.1520a(d), 416.920a(d). If the ALJ's assessment is "none" or "mild" in the first three areas of function, and is "none" in the fourth area of function, the claimant's mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 CFR §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 CFR §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]." 20 CFR §§ 404.1520a(d)(3) and (e)(2), 416.920a(d)(3) and (e)(2).

## ALJ'S FINDINGS

The ALJ made the following findings in his September 18, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2022.

2. The claimant has not engaged in substantial gainful activity since February 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: Sturge Weber syndrome causing scoliosis and vision impairment, leg venous insufficiency, obesity, petit mal seizures, sleep apnea, headaches, depression, borderline intellectual functioning ("BIF"), and attention deficit hyperactivity disorder ("ADHD") (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) where the claimant lifts or carries 20 pounds occasionally and 10 pounds frequently, stands or walks for six of eight hours during the workday, and sits for six of eight hours during the workday. The claimant can perform simple, unskilled (SVP 1 or 2, with one to three step processes) work. The claimant can have no work at unprotected heights, around dangerous moving machinery, open flames, and bodies of water.

6. The claimant is capable of performing past relevant work as an assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, at from February 1, 2019, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

## ADMINISTRATIVE RECORD

*Administrative Hearing*

Plaintiff testified at his hearing before the ALJ on August 26, 2020. Plaintiff testified that he last worked in 2018 performing housecleaning work with his mother and temp work for a temp

6

service.  Plaintiff explained that he did the vacuuming on the housecleaning jobs and dishwashing in a fast-food setting.  He completed 10th grade taking special education classes and he can read and write.  Plaintiff stated that he does not have a driver's license because he did not pass the test.

Plaintiff testified that he has Sturge-Weber syndrome, which causes discoloration on the left side of his face and body and glaucoma in his left eye.  He stated that he wears glasses but he still does not see very good because his glaucoma is severe.  Plaintiff also stated, however, that he can read a newspaper, see his cellphone, and use social media.  Plaintiff uses eye drops every day.  He explained that Sturge-Weber syndrome additionally causes vascular problems and he had a blood clot and a lump on his leg.

Plaintiff estimated that he can walk about a half mile and lift approximately 40 pounds.  He testified that he has not worked since 2018 or 2019 because he has low back pain and leg pain.  Plaintiff also stated that he has difficulty with concentration and depression and he has to be reminded to complete tasks.  He has been fired from jobs for being too slow.  Plaintiff sleeps with a CPAP due to sleep apnea and has trouble sleeping through the night, causing him to be tired and groggy.

Plaintiff's mother, Veronica Castilla, also testified at the hearing.  Ms. Castilla testified that when Plaintiff worked for her, he complained of being tired and needed breaks.  She also has to help him remember to take his medications.   With regard to seizures, she stated that she has never seen him have a seizure, he just shakes.

A vocational expert witness, Jessica Bohne, testified at the hearing.  Ms. Bohne classified Plaintiff's past relevant work as follows: (1) kitchen helper, DOT 318.687-010, SVP 2, unskilled, medium; (2) assembler II, DOT 723.684-018, SVP 2, unskilled, light, performed and classified a the light exertional level; (3) porter, DOT 915.687-022, SVP 2, unskilled, performed and classified

at the medium exertional level; and (4) industrial cleaner, DOT 381.687-018, SVP 2, unskilled, performed and classified at the medium exertional level. The ALJ then presented Ms. Bohne with a hypothetical individual who is limited to light work, simple, unskilled, SVP 1 or 2 with one to three step processes, no more than occasional changes in the work processes or locations and settings and no work around bodies of water. Ms. Bohne testified that the hypothetical individual could perform Plaintiff's past work of assembler II but no other past relevant work. She also identified two additional jobs that would be available: (1) ticket taker, DOT 344.667-010, SVP 2, unskilled, light exertional level, with 42,000 jobs in the national economy; and (2) marker, DOT 209.587-034, SVP 2, unskilled, light exertional level, with 57,000 jobs in the national economy. She stated that a job available to the hypothetical individual with one to two step processes is silver wrapper, DOT 318.687-018, SVP 1, unskilled, light exertional level, with 35,000 jobs in the national economy. Ms. Bohne testified that these jobs do not permit an individual to be off task more than nine percent of the total workday.

*Medical Record*

Plaintiff's eyes were examined at Heaton Eye Associates on August 8, 2018. Plaintiff complained of pain in the left eye for two months when lying down. He stated that it improved with eye drops. His history includes glaucoma in the left eye and left eye glaucoma implant surgery. Plaintiff's visual acuity in the right eye was 20/20 and his visual acuity in the left eye was 20/200 uncorrected and 20/40 with correction. Intraocular pressure was 16 on the right and 16 on the left. On an earlier finding, Plaintiff's intraocular pressure was 18 on the left. Dr. Thung diagnosed mild stage glaucoma and prescribed eye drops and glasses. At a previous examination on April 6, 2018, Plaintiff reported no pain, his corrected vision on the left was 20/20 and he had an intraocular pressure of 20 in both eyes.

Plaintiff went to Trinity Clinic on May 14, 2018 for a physical examination to establish care. His blood pressure was 124/84 and his BMI was 43.59. Plaintiff exhibited scoliosis with his left leg smaller than the right and his right hip riding higher than the left. He had a splotchy angioma on his left side from his face to his leg. Robert Clarke, PA-C, recommended a heart healthy diet and exercise. Dr. Wegener performed a circumcision on June 13, 2018. On September 5, 2018, Plaintiff complained of chest pain. Plaintiff had normal cardiovascular, pulmonary, musculoskeletal and neurological examinations. Dr. Hwang counseled Plaintiff to eat a low-fat diet and exercise to reduce his cholesterol. She diagnosed high cholesterol, mild intermittent asthma without complication and a vitamin D deficiency.

Plaintiff had an intake physical examination by Correctional Managed Health Care on October 26, 2018. Plaintiff's reported diagnoses included hypertension, obesity, glaucoma and vision correction. He had a blood pressure of 148/99 and a BMI of 41. Plaintiff had full sensation to light touch in his legs. He was prescribed medications for hypertension and high cholesterol. At a re-check on November 5, 2018, Plaintiff's blood pressure was 126/77.

At a return visit to Trinity Clinic on May 17, 2019, Plaintiff had a blood pressure of 140/98 and he was prescribed lisinopril. Plaintiff did not show for his appointment with Dr. Hwang on June 17, 2019. He returned on June 20, 2019 with complaints of swelling of the right hip, thigh and foot, worsening memory loss, moodiness and sweating. On examination, Dr. Hwang noted left superficial hemangioma, normal musculoskeletal range of motion with tenderness, scoliosis, normal reflexes, normal coordination, enlarged thigh and calf muscles on the right, and normal neck, cardiovascular and pulmonary examinations. Dr. Hwang recommended exercise and a plant-based, low fat, low salt diet. An MRI of the brain on July 9, 2019 showed some slightly prominent

veins consistent with Plaintiff's history, but no definitive evidence of underlying vascular malformation.

Plaintiff returned to Heaton Eye Associates on May 23, 2019 and reported a slight decrease in distance vision, mostly on the left. Plaintiff's visual acuity near and distance on the right was 20/20 and it was 20/25 near and 20/100 distance on the left. With refraction, Plaintiff reached 20/20. Dr. Dossey noted that Plaintiff was doing well overall, his intraocular pressures were good and his tube shunt looked good. He stated that Plaintiff could switch to generic eye drops for cost savings. At a re-check on November 20, 2019, Dr. Dossey stated that Plaintiff's glaucoma and visual field tests were stable. His intraocular pressures were within target range and he was tolerating his eye drops.

Suzanne Chapman, Psy.D., performed a consultative mental status examination on July 16, 2019. Plaintiff exhibited a depressed mood and flat affect. His thought processes were goal directed. He denied delusions, obsessions, hearing things not there or seeing things not seen by others. Plaintiff correctly identified the date, day, president, and current news. Plaintiff's remote memory appeared intact. Dr. Chapman noted difficulty, however, with memory and concentration tasks. Dr. Chapman diagnosed somatic symptom disorder with predominant pain, persistent, severe, and major depressive disorder, recurrent, severe, with anxious distress, severe. She opined that Plaintiff's prognosis is guarded and that it is highly unlikely he would be able to sustain meaningful employment at this time due to severe depression, made worse by his medical problems. Dr. Chapman recommended therapy.

On August 27, 2019, Plaintiff was diagnosed with obstructive sleep apnea following a sleep study. A CPAP machine was prescribed for Plaintiff.

Plaintiff went to the Andrews Center on September 10, 2019 seeking "a quick evaluation" due to depression.[2] Plaintiff reported depression caused by his inability to keep a job and health issues. Plaintiff stated that he was having panic attacks due to stress. Andrews Center staff performed a suicide risk assessment and referred Plaintiff for treatment.

Dr. Hwang examined Plaintiff on December 23, 2019. Plaintiff complained of left leg pain and upper respiratory symptoms. He had a blood pressure of 130/80 and a BMI of 42.87. Plaintiff's left leg was colder than the right. Dr. Hwang diagnosed flu and asthma and recommended an ultrasound of the left leg. She continued Plaintiff on his blood pressure medications.

Plaintiff was evaluated by Dr. Duane Griffith at Precision Spine Care on January 8, 2020 as a new patient. Plaintiff complained of severe, radiating lumbar pain for one year. On examination, Plaintiff had normal motor function in his legs, grossly intact sensation, negative straight leg raise on the right, plus/minus positive straight leg raise on the left, negative Patrick's test, symmetrical patellar tendon reflexes and no clubbing, cyanosis or edema. Plaintiff ambulated with a non-antalgic gait, performed heel and toe raises without assistance and was able to rise to a standing position without difficulty. Plaintiff exhibited a decreased range of motion in flexion and extension of the spine, but he had no tenderness to palpation. Dr. Griffith ordered an MRI and recommended a vascular consult for lower extremity varicose veins. He noted that Plaintiff could not receive oral opioids due to marijuana use. Dr. Griffith additionally gave Plaintiff epidural block injections. An MRI on February 3, 2020 showed minimal degenerative changes superimposed on a slightly congenitally small central canal. No significant central canal or neural foraminal stenosis was evident. There was minimal underlying bulging at L4-L5 and L5-S1.

---

[2] Administrative Record, ECF 14-13, at *38 (Bates stamp p. 712).

At a telemedicine visit on March 31, 2020, Plaintiff reported a recurrence of pain a few days after the selective epidurals. Dr. Griffith diagnosed a disc bulge at L5-S1. At a follow-up telemedicine visit on April 21, 2020, Plaintiff reported that his pain was not severe enough to see a neurosurgeon.[3] Plaintiff returned to the clinic on June 16, 2020 with atrophy in the left leg and an antalgic gait. Plaintiff had mildly decreased range of motion in the lumbar spine and pain to palpation in the lumbar paravertebral musculature. Timothy Lambert, FNP-C, recommended that Plaintiff continue doing terminal lumbar extension exercises.

Plaintiff presented with right leg edema and pain on April 28, 2020. Dr. Hwang ordered an ultrasound of the right leg. She also referred Plaintiff back to the sleep clinic for a different CPAP mask. The ultrasound showed a DVT in the right calf vein. Dr. Hwang treated Plaintiff with a blood thinner. At a return visit on May 22, 2020, the pain and swelling in the right leg had resolved. Plaintiff tested positive for COVID-19 in July 2020. He was treated with a Z-pack, prednisone and a steroid inhaler. On July 29, 2020, Dr. Hwang treated Plaintiff for acute costochondritis with Mobic.

Plaintiff had an initial evaluation by John Fite, DPT, on August 7, 2020 for the purpose of completing disability paperwork. Mr. Fite opined that Plaintiff has some postural deficits contributing to his low back pain. Plaintiff demonstrated an inability to lift more than 20 pounds from the floor and 10 pounds from the waist to overhead. He stated that Plaintiff would have difficulty with work requiring frequent stooping, bending, lifting or carrying. Mr. Fite completed a Medical Source Statement Form recommending that Plaintiff only occasionally lift less than 10 pounds. He reported that Plaintiff requested to sit and rest after walking for 6 minutes due to back pain and he was able to stand/walk for 20 minutes during another portion of his visit. Mr. Fite

---

[3] Administrative Record, ECF 14-13, at *70 (Bates stamp p. 744).

estimated that Plaintiff can sit for 2 hours in a normal 8-hour workday. He can perform unlimited manipulative functions, but Mr. Fite concluded that Plaintiff cannot work on a sustained basis for 8 hours per day, 40 hours per week and he would likely be absent from work 3 times per month.

## DISCUSSION AND ANALYSIS

In his brief, Plaintiff asserts one issue for review: whether the ALJ improperly failed to include limitations in the residual functional capacity ("RFC") determination for all severe impairments. Plaintiff alleges that the ALJ did not consider all of his functional limitations in his RFC assessment. Plaintiff complains that the ALJ did not include accommodations for visual impairment, venous insufficiency, seizures, headaches or borderline intellectual functioning despite finding these conditions to be severe impairments.

In response, the Commissioner asserts that the ALJ's RFC assessment is supported by substantial evidence. The Commissioner submits that the ALJ properly considered Plaintiff's combination of impairments and the examination findings in the record support the ALJ's assessment. In addition, the Commissioner points to the opinions of the State agency medical consultants that expressly state that Plaintiff's impairments are accounted for with a limitation to light work. The Commissioner argues that Plaintiff failed to identify any objective evidence showing a need for greater limitations than those afforded by the ALJ's RFC finding.

In his reply, Plaintiff re-asserts his argument that the ALJ's RFC finding is deficient and fails to adequately address his functional limitations caused by headaches, venous insufficiency, visual impairment, and borderline intellectual functioning. Plaintiff submits that the ALJ failed to consider the opinion of Dr. Reams questioning whether he could sustain meaningful employment. Plaintiff also asserts that the ALJ failed to consider the distraction his seizures would cause for co-workers or whether seizures would affect his ability to remain on task.

The ALJ included Sturge Weber syndrome causing scoliosis and vision impairment, leg venous insufficiency, petit mal seizures, headaches and borderline intellectual functioning in Plaintiff's list of severe impairments. As explained by the Court in *Stone v. Heckler*,[4] "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." A claimant must show more than a severe impairment to receive benefits. "Satisfying the *Stone* test of severity means only that claimant has passed the second step of the inquiry mandated by the regulations." *Shipley v. Secretary of Health and Human Services*, 812 F.2d 934, 935 (5th Cir. 1987). "A claimant is not entitled to Social Security disability benefits merely upon a showing that (s)he has a severe disability. Rather, the disability must make it so that the claimant cannot work to entitle the claimant to disability benefits." *Gutierrez v. Barnhart*, 2005 WL 1994289, at *9 (5th Cir. 2005). The consideration of whether an impairment is severe at step two is altogether different than the RFC inquiry at step four. *Id.*; see also *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001). As such, Plaintiff has not shown error simply because the ALJ's RFC does not incorporate specific limitations for every identified severe impairment.

It is the ALJ's responsibility to determine a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). That finding, however, must be supported by substantial evidence. *Id*. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d at 452. An ALJ is not required to include limitations that are not supported by the record. On review, the Court will scrutinize the record to determine whether substantial evidence is present to support the ALJ's

---

[4] *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

finding, but the Court cannot reweigh the evidence or substitute its judgment. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "If the Commissioner's fact findings are supported by substantial evidence, they are conclusive." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971)).

In his discussion of Plaintiff's severe impairments, the ALJ noted that Plaintiff's vision impairment, standing alone, does not rise to the level of a severe impairment because eye examinations in 2018 and 2019 showed vision corrected to 20/20, 20/40, and 20/25, with no evidence of significant vision abnormality in the record.[5] After finding that Plaintiff does not meet a listed impairment, the ALJ turned to the RFC analysis. The ALJ summarized Plaintiff's statements concerning his symptoms and the objective evidence from the medical record. The ALJ noted that Plaintiff's testimony of limited vision and difficulty standing and walking due to back pain is contradicted by examinations showing correctable vision and full strength with a non-antalgic gait.

The ALJ further noted limited hospitalizations for seizures and headaches, negative straight leg raises, pain relief with lumbar steroid injections, treatment for leg swelling, minimal degenerative changes revealed on MRI and resolved edema. In his consideration of Plaintiff's mental functioning, the ALJ cited specific examination findings in the record showing moderate limitations in understanding, remembering, or applying information, mild limitations in interacting with others, moderate limitations in the ability to concentrate, persist, or maintain pace, and mild limitations in adapting and managing oneself.

The ALJ then described Plaintiff's inconsistent work history prior to his alleged disability onset date, normal mood and affect in examinations, limited psychological treatment, and lack of

---

[5] Administrative Record, ECF 14-2, at *15 (Bates stamp p. 14).

hospitalizations for seizures or headaches. The ALJ opined that Plaintiff's ability to perform daily activities such as preparing simple meals, washing dishes, taking out the trash, shopping, paying bills and watching television does not support his allegation of disability.

Next, the ALJ turned to consideration of medical opinions and prior administrative medical findings. The ALJ explained that the State medical consultant opinions that Plaintiff can perform light work with an avoidance of hazards is supported by evidence in the record of pain relief with lumbar injections and Plaintiff's testimony of seizure history. He opined that their inclusion of postural limitations is not supported by the treatment record showing full strength and normal walking. The ALJ concluded that the State psychological consultant opinions that Plaintiff is limited to unskilled work adequately provides for the evidence of borderline intellectual functioning and Plaintiff's testimony of ADHD. He determined that their opinions concerning limited social interactions and occasional workplace changes, however, are not supported by evidence of examinations with normal mood and affect, Plaintiff's denial of problems getting along with family, friends, neighbors, authority figures and others, and Plaintiff's limited psychological treatment.

The ALJ described Dr. Reams' opinion that Plaintiff has depression and anxiety causing difficulty with memory and concentration tasks as vague because it does not define how often he can perform memory tasks, concentration tasks, or interact with others. He also noted that her consultative examination opinion does not take into consideration mental status examinations showing normal mood and affect and Plaintiff's limited psychological treatment.

Finally, the ALJ considered the physical therapist's opinion that Plaintiff can lift less than 10 pounds, is required to sit and rest after standing or walking for 20 minutes, can sit about 2 hours, cannot sustain full time work, will be absent three times per month, cannot frequently bend or

stoop, and has a vision impairment and medical issues that will interfere with his ability to maintain full-time employment. The ALJ explained that this opinion is contradicted by medical evidence of full strength, normal walking, limited hospitalizations for headaches or seizures, self-reported stable back pain with injections and spinal imaging showing minimal degenerative changes.

Plaintiff submits that the ALJ failed to consider functional limitations for visual impairment, venous insufficiency, seizures, headaches, and borderline intellectual functioning. As noted previously, the ALJ concluded that Plaintiff's visual impairment is not a severe impairment. That finding is supported by multiple examination findings that Plaintiff's vision is correctable. Plaintiff does not point to any contradictory objective evidence. Moreover, the ALJ's evaluation of the State medical and psychological consultant opinions expressly addresses how Plaintiff's venous insufficiency, seizures, and borderline intellectual functioning are incorporated into the RFC finding.[6] The ALJ additionally notes that "the record is absent hospitalizations for headaches or seizures."[7]

Plaintiff also alleges in his reply brief that the ALJ erred by failing to address Dr. Chapman's statement that it is highly unlikely he would be able to sustain employment. The full statement by Chapman is in her prognosis. She states: "His prognosis is GUARDED. Due to his severe medical problems and severe depression, which is made worse by his medical problems, it is highly unlikely that he would be able to sustain meaningful employment at this time."[8] As stated above, the ALJ explained that Dr. Reams' opinion concerning the severity of Plaintiff's depression is inconsistent with evidence in the record of normal mood and affect and limited treatment. The ALJ fully and adequately considered her opinion.

---

[6] Administrative Record, ECF 14-2, at *21 (Bates stamp p. 20).
[7] *Id*.
[8] Administrative Record, ECF 14-13, at *30 (Bates stamp p. 704).

In sum, the ALJ's RFC finding is supported by substantial evidence. The ALJ's decision reveals that he sufficiently considered Plaintiff's symptoms, the objective medical record and opinion evidence. He cited specific evidence to support his opinions. Plaintiff has not shown that the ALJ failed to apply the correct legal standards or that the RFC assessment is not supported by the record. The Commissioner's decision should be affirmed and the complaint should be dismissed.

## RECOMMENDATION

It is hereby **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED** and that this social security action be **DISMISSED WITH PREJUDICE**.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 27th day of May, 2022.

_K. Nicole Mitchell_
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

18